```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF TEXAS
                   HOUSTON DIVISION
```

VLOEIBARE PRET LIMITED,            §
                                   §
        Plaintiff,                 §
                                   §
v.                                 §    CIVIL ACTION NO. 4-13-3653
                                   §
LLOYD'S REGISTER NORTH             §
AMERICA, INC.,                     §
                                   §
        Defendant.                 §

## MEMORANDUM OPINION

Pending before the court[1] is Defendant's Motion to Dismiss on forum non conveniens grounds (17).  The court has considered the motions, the responses, all other relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS** Defendant's Motion to Dismiss.

### I.  Case Background[2]

Four Jacks (the "Vessel") is a motor yacht valued at $25,163,000 built by Palmer Johnson Yachts ("Palmer Johnson") in Sturgeon Bay, Wisconsin.  Vloeibare Pret Limited ("VP" or "Plaintiff"), a company with its principal place of business in Grand Rapids, Michigan, arranged for the building of the Vessel with Palmer Johnson on December 19, 2006.  The Vessel was entered into class and maintained in class pursuant to a contract (the

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Doc. 28.

[2] All of the facts in the following section are stated in Plaintiff's Complaint.  See Doc. 1.

"Contract") between Lloyd's Register North America ("LRNA" or "Defendant") and Palmer Johnson.  The Contract contains a forum-selection clause which, in relevant part, provides:

> Any dispute, claim, or litigation between any member of the LR Group and the Client arising from or in connection with the Services provided by LR shall be subject to the exclusive jurisdiction of the English courts and will be governed by English law.[3]

Classification is the process by which a ship is inspected to make sure it complies with building plans and numerous safety regulations and is a legal and practical requirement before a ship can operate and/or carry passengers internationally.  On June 9, 2008, LRNA issued a Statement of Compliance and a Certificate of Class concerning the Vessel.  These certificates were based upon Lloyd's Register-approved drawings, *The Code of Practise for Safety of Large Commercial Sailing & Motor Vessels*, and Lloyd's Register Rules and Regulations for the Classification of Special Service Craft (collectively, the "Rules").  The Rules also contain a forum-selection clause which, in relevant part, provides:

> Any dispute about the Services or the Contract is subject to the exclusive jurisdiction of the English courts and will be governed by English law.[4]

---

[3]   Doc. 17, Def.'s Mot. to Dismiss p. 6.  The forum-selection clause is not quoted in the Plaintiff's First Amended Complaint, however, it makes reference to the contract between LRNA and Palmer Johnson.  See Doc. 1, Pl.'s First Amended Complaint p. 3.

[4]   Doc. 17, Def.'s Mot. to Dismiss p. 6.  The forum-selection clause is not quoted in the Plaintiff's First Amended Complaint, however, it makes reference to the Rules used by LRNA.  See Doc. 1, Pl.'s First Amended Complaint p. 3-4.

VP paid the purchase price and took delivery of the Vessel on June 9, 2008, from Palmer Johnson in reliance on LRNA's representations about the Vessel with regard to the Statement of Compliance and the Certificate of Class.  Throughout the next three years, LRNA issued five more Interim Certificates to VP, certifying that it had inspected various aspects of the Vessel.

On December 14, 2011, the captain of the Vessel discovered fractures in the Vessel's portside hull shell plating.  Following this discovery, VP arranged for temporary repairs of the Vessel in the amount of approximately $300,000 and permanent repairs in the amount of approximately $1,800,000, bringing the total amount VP paid for damages to the Vessel to $2,109,283.

VP alleges that the defects existed when LRNA classed the ship, and, thus, LRNA failed to exercise reasonable care in gathering the necessary information and made false representations regarding the Vessel's compliance with the Rules.  VP filed the instant suit against LRNA to recover the costs of the repairs needed for the Vessel due to the alleged negligent misrepresentation and gross negligence of LRNA.

## II. Analysis

LRNA filed a Motion to Dismiss on forum non conveniens grounds.[5]  LRNA urges dismissal so that this suit may be filed in England, the designated location in the forum-selection clauses

---

[5] See Doc. 17, Def.'s Mot. to Dismiss.

contained in the Contract and the Rules.

The analysis here addresses two issues: (1) whether the forum-selection clause in the Contract and/or in the Rules is valid as enforced against VP based on direct-benefit estoppel; and (2) whether the public-interest factors weigh in favor of dismissing this suit on forum non conveniens grounds.

**A.   The Forum Selection Clauses**

The court must first determine if the forum-selection clauses in the Contract and/or the Rules are enforceable against VP, a third-party non-signatory to either document.  LRNA contends that VP is bound by both forum-selection clauses by way of direct-benefit estoppel.  VP argues that it is not bound by either forum-selection clause and that enforcement of the forum-selection clauses would be unreasonable under the circumstances.

Issues related to enforceability of forum-selection clauses are matters of federal law in cases that are based on diversity or admiralty jurisdiction.  See Haynsworth v. The Corp., 121 F.3d 956, 962 (5th Cir. 1997).  Further, federal courts must begin with a presumption that forum-selection clauses should be enforced in international transactions.  See Haynsworth, 121 F.3d at 962; see also Hellenic Inv. Fund, Inc. v. Det Norske Veritas [hereinafter Hellenic II], 464 F.3d 514, 520 (5th Cir. 2006).

The Fifth Circuit has held that an estoppel theory, specifically direct-benefit estoppel, is sufficient to bind a

4

third-party non-signatory (1) to the forum-selection clause in a contract between a ship builder and a classification society *or* (2) to a forum-selection clause contained in a classification society's rules and regulations.  See Hellenic II, 464 F.3d 514 (5th Cir. 2006).  Direct-benefit estoppel applies when a third party embraces the benefits of a contract or classification society's rules during its life, despite being a non-signatory, and then, attempts to repudiate the forum-selection clause in litigation. Id. at 517-18.

In Hellenic II, the purchaser of a sea vessel brought an allegation of fraudulent misrepresentation against an international classification society based upon the society's representations in the ship's classification documents.  Id. at 516.  The district court dismissed the plaintiff's claim on forum non conveniens grounds, finding that under direct-benefit estoppel, knowing reliance upon the classification society's rules and regulations bound the plaintiff to that forum-selection clause.  See Hellenic Inv. Fund, Inc. v. Det Norske Veritas [hereinafter Hellenic I], No. Civ.A.H-04-3010, 2005 WL 1693150, at *2 (S.D. Tex. Jul. 19, 2005). Upon review, the Fifth Circuit held that both the forum-selection clause in the contract between the ship builder and classification society *and* the forum-selection clause contained in the classification society's rules and regulations were enforceable against the third-party purchaser based on direct-benefit estoppel. See Hellenic II, 464 F.3d at 518-20.

5

**1. The Contract**

VP raises several arguments similar to those raised by the plaintiff in <u>Hellenic II</u>.  <u>See</u> <u>id.</u> at 518.  First, VP argues that the forum-selection clause in the Contract is not binding on VP because VP was not a party to the Contract and did not "knowingly exploit" or "embrace" the Contract.  As in <u>Hellenic II</u>, this argument is not supported by the allegations.  <u>See</u> <u>id.</u> at 518-19. VP alleges in the Complaint that it knew the following: (1) that LRNA had been retained to provide classification services; (2) that the Rules would govern that process; (3) that VP would only purchase and take delivery of the vessel if VP received a Classification Certificate from LRNA; and (4) that LRNA provided a Classification Certificate, which confirmed that LRNA had surveyed and classed VP's yacht in compliance with the Rules.[6]  Like the <u>Hellenic II</u> plaintiff, VP clearly contemplated that Defendant would be issuing the required certificates under the terms of the Contract, because LRNA's certificates were essential to VP's decision to purchase the Vessel from the shipbuilder.  <u>See</u> <u>id.</u> at 519.  In fact, knowing reliance on Defendant under the Contract is one of the required elements for the negligent misrepresentation claim that VP alleges.  <u>See</u> <u>Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.</u>, 346 F. 3d 530, 535 (5th Cir. 2003).

VP also contends that the forum-selection clause in the

---

[6]     Doc. 1, Pl.'s Compl. pp. 2-4.

Contract is not binding on VP because it specifically states that it excludes reliance by a third party. This is not an accurate reading of the forum-selection clause in the Contract. The forum-selection clause states that it applies to "the LR Group and the Client;" it does not disclaim the rights of any third parties to the Contract, as suggested by VP. It is not disputed that VP is a third-party non-signatory and not a named party to the Contract, which is why the doctrine of direct-benefit estoppel is being applied here. The fact that VP is not a named party in the forum-selection clause is not relevant because it does not change the analysis of direct-benefit estoppel.

Next, VP contends that its claims are outside the scope of the textual language used in the forum-selection clause in the Contract for three reasons. First, VP argues that it does not fall under the classification of "Client" because this term refers to Palmer Johnson. However, the fact that VP is not the named "Client" in the forum-selection clause does not preclude application of direct-benefit estoppel.

Second, VP argues that allegations of gross negligence and negligent misrepresentation do not fall under the term "Services" in the forum-selection clause because they were actions separate from the classing of the Vessel. However, the forum-selection clause states that it applies to "any dispute. . . in connection with the Services provided by LR." Because VP's claims of

negligent misrepresentation and gross negligence are in connection to the classing of the Vessel, they are encapsulated by the term "Services".

Third, VP argues that LRNA does not fall under the classification of "LR Group." In response, LRNA represents that it is one of LR's affiliates and subsidiaries, and thus, is a member of the "LR Group."[7] VP does not challenge this assertion.

Because the evidence shows that VP knowingly relied on the Contract during its life, the forum-selection contained in the Contract is enforceable against VP by way of direct-benefit estoppel. Although finding one forum-selection clause binding is sufficient to move on to the forum non conveniens analysis, the court will also consider the validity of the forum-selection clause in the Rules per the Hellenic II court's example. See Hellenic II, 464 F.3d at 520.

### 2. The LRNA Rules

VP again argues that the forum-selection clause in the LRNA Rules is not binding on VP because VP did not agree to the terms of the Rules. It is undisputed that VP did not write or negotiate terms in the classification society's rules. However, VP was on notice of the use and content of the Rules before it took delivery of the yacht. The same facts from Plaintiff's Complaint that showed knowing reliance on the Contract also show that Plaintiff

---

[7] Doc. 31, Def.'s Reply in Support of Mot. to Dismiss p. 8.

had notice of the Rules: (1) LRNA had been retained to provide classification services; (2) the Rules would govern that process; (3) VP would only purchase and take delivery of the vessel if VP received a Classification Certificate from LRNA; and (4) LRNA provided a Classification Certificate, which confirmed that LRNA had surveyed and classed VP's yacht in compliance with the Rules.[8] These facts provide a sufficient basis to find that VP was on notice with respect to the contents of the Rules, despite there being no negotiations between the parties, and was thus bound by the Rules' forum-selection clause. See Hellenic I, 2005 WL 1693150 at *2 (finding that because sea vessel purchaser was on notice that classification society was issuing the required certificates, "then it certainly would know that it should inquire further as to applicable rules and regulations of the society.").

Because the language of the forum-selection clause in the Contract and the Rules are similar, VP again contends that the forum-selection clause in the Rules is not binding on VP because the Rules specifically disclaim third-party reliance. For the same reasons set forth above, this is a misreading of the forum-selection clause in the Rules, which under direct-benefit estoppel, applies to third-party non-signatories to the Contract.

Last, VP argues that its claims are outside the scope of the forum-selection clause in the Rules because VP's claims are based

---

[8]    Doc. 1, Pl.'s Complaint pp. 2-4.

in tort, not on breach of contract. Although negligent misrepresentation sounds in tort, VP's claim is based upon LRNA's alleged failure to follow its own Rules in classing the Vessel. The Rules establish the standards of classification, the method of inspection, the procedure for certifying class, and they contain a forum-selection clause. See Hellenic II, 464 F.3d 514, 520; Hellenic I, 2005 WL 1693150 at *2 (finding that although the allegation of negligent misrepresentation is based in tort, an element of the action required reliance on the Rules of the classification society and therefore, required the enforcement of the forum-selection clause contained in the Rules that were relied on).

**B.    Forum Non Conveniens**

Defendant seeks dismissal of this case on the basis of forum non conveniens in order to move this lawsuit to England, the location specified by the Contract's and the Rules' forum-selection clauses. The "doctrine of forum non conveniens proceed[s] from [the] premise [that] ... [i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." DTEX, LLC v. BBVA Bancomer, S.A., 508 F.3d 785, 794 (5th Cir.2007) (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 722 (1996) (emphasis omitted)).  "The essence of the forum non conveniens doctrine is that a court may decline jurisdiction and may actually dismiss a case, even when the case is properly before the court, if

10

the case more conveniently could be tried in another forum." In re Volkswagen of Am., Inc., 545 F.3d 304, 313 (5th Cir. 2008) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947)).

Recently, the United States Supreme Court held that the proper means for seeking enforcement of forum-selection clauses that designate a state court or a foreign federal court as the chosen forum is via a forum non conveniens motion, rather than a Federal Rule of Civil Procedure 12(b)(3) motion. Atlantic Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex., 134 S. Ct. 568, 580 (2013).  In its decision, the Supreme Court also stated that controlling weight be given to forum-selection clauses in international transactions absent "extraordinary circumstances." Id. at 581.  These extraordinary circumstances must be proved by the party resisting enforcement of the clause, and only the public-interest factors of a traditional forum non conveniens analysis may be considered.  Id. at 575.  Thus, the convenience of the parties is no longer a factor, nor are any of the other private-interest factors that were previously considered under the traditional analysis.  Id. at 582. Typical public-interest factors include (1) administrative difficulties stemming from court congestion, (2) avoiding problems in applying foreign law, and (3) the forum's interest in having localized disputes settled at home.  Id. at 581; see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, n. 6 (1981).

VP argues and this court agrees that this court does have an interest in settling a dispute involving a corporation that does business in Houston. However, considering the other factors, this suit arises under federal admiralty law, not Texas law; thus, the factor of applying Texas law in an English court would not be an issue here. The factor of administrative difficulties is neutral because there is no indication that either forum is too congested to hear this suit. This court's interest in settling a dispute involving a local corporation is not sufficient for this case to meet the rare "exceptional circumstances" standard and does not outweigh a valid forum-selection clause.

### III. Conclusion

Based on the foregoing, the court **GRANTS** Defendant's Motion to Dismiss on forum non conveniens grounds.

**SIGNED** in Houston, Texas, this <u>8th</u> day of August, 2014.

---
U.S. MAGISTRATE JUDGE